UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

**COREY JERRY PRITCHETT**,

Plaintiff,

v.

**CLACKAMAS COUNTY SHERIFF CRAIG ROBERTS** and **WENDY ARMITAGE, R.N.**,

Defendants.

Civil Case No. 3:10-CV-00746-KI

OPINION AND ORDER

Corey Pritchett, 16888342
Two Rivers Correctional Institution
82911 Beach Access Rd.
Umatilla, Oregon 97882

Pro Se Plaintiff

Page 1 - OPINION AND ORDER

      Stephen L. Madkour, County Counsel
      Clackamas County, Oregon
      Alexander Gordon
      Assistant County Counsel
      2051 Kaen Road
      Oregon City, Oregon  97045-1819

        Attorneys for Defendants

KING, Judge:

Plaintiff Corey Jerry Pritchett brings this civil rights action alleging he was subjected to cruel and unusual punishment in violation of the Eighth Amendment while in custody at Clackamas County Jail. Specifically, Pritchett alleges Clackamas County understaffs the medical personnel at the jail, which resulted in a jail nurse acting with deliberate indifference when she injected Pritchett with insulin rendering him unconscious until he was revived after transport to a hospital.

On December 1, 2011, I dismissed all claims against the Clackamas County Commissioners and Dr. Lewis. Before the court is Defendants' Motion for Summary Judgment on the Plaintiff's Second Amended Complaint [40]. For the reasons below, I grant the motion and dismiss all remaining claims in this action.

## FACTS

Wendy Armitage is a registered nurse employed at the Clackamas County Jail who cared for Pritchett when he was an inmate there during May and June 2008.

Clackamas County Jail uses registered nurses, nurse practitioners, and doctors to care for the inmates. A Corrections Health Program Coordinator, who is an accredited adult nurse

practitioner, or higher, with supervisory experience, directs the administration of health care at the jail. When Pritchett was an inmate at the jail, two contract physicians, licensed in Oregon, were either on-site or available by telephone for consultation. The physicians were restricted to eight hours per week on-site for necessary chart reviews and examinations but were available for telephone consultation 24 hours a day, seven days a week. Dr. Lewis is one of the contract physicians. A nurse practitioner was on-site Monday through Friday for eight hours a day. Registered nurses staffed the clinic on-site 24 hours a day, seven days a week. If other care was needed, the jail transported the inmate to health care providers in the community, including Willamette Falls Hospital. An inmate could use a medical request form to ask to see a health care provider. A registered nurse screened the requests to determine the level of care needed.

      The medical staff completed an Inmate Classification Screening Form for each new inmate. Inmates were given a physical if they were expected to remain in custody more than 14 days. A treatment plan was developed and explained to the inmate, who could either accept or refuse it.

      Prior to Pritchett's incarceration at Clackamas County Jail, he was monitored by a kidney specialist hired by the Oregon Department of Corrections in Umatilla County. Pritchett was diagnosed with high blood pressure, chronic kidney failure, and diabetes. At the jail, Pritchett claims that he was not examined by Dr. Lewis and was not provided with a kidney specialist. Lewis claims the medical plan of Dr. Lewis and RN Armitage was inadequate, causing him injury due to an improper dosage of insulin. He further claims that RN Armitage failed to obtain adequate medical assistance for him.

Pritchett's medical chart notes at the jail indicate the medications on his person when he was brought from the Multnomah County Detention Center and booked into the Clackamas County Jail. Dr. Lewis, met with Pritchett and prescribed a course of treatment for him. The treatment plan in place on June 30, 2008 included numerous medications. The nurses were also to check Pritchett's blood glucose level at 6:30 a.m., 10:30 a.m., and 4:30 p.m. Depending on the result, the nurses were to administer a particular amount of Novolog, a fast-acting insulin generally administered at mealtimes. If Pritchett's blood glucose level was over 350, the nurse was to call the physician.

On June 30, 2008, RN Armitage checked Pritchett's blood sugar at 10:30 a.m. His blood sugar tested at 268, so she administered 12 units of Novolog, as per the treatment plan. At 3:30 p.m., RN Armitage conferred with a nurse practitioner about Pritchett's history of low blood pressure. She noted this in Pritchett's chart notes.

At 4:45 p.m., the chart notes document that Pritchett was unable to rise from his bed for the scheduled blood sugar test. All chart notes for this time period were written by RN Gollehon. Pritchett had difficulty responding to questions and was sweating excessively. When assessed in light of Pritchett's prescribed medications, the symptoms indicated possible hypoglycemia, which is a drop in blood sugar below normal levels. Pritchett's blood sugar tested at 48, an amount low enough to harm a person. The chart notes document that Pritchett was given Insta-glucose. Insta-glucose is used to treat hypoglycemia by quickly raising the glucose level. Although RN Armitage was not involved in the activities at 4:45 p.m., she believes that administering Insta-glucose was medically appropriate and within the applicable standard of care.

The jail called for paramedics at 4:45 p.m. to assist with Pritchett. They administered dextrose 50% intravenously. After receiving the two medications, Pritchett's blood sugar level rose to 188 but he was still drowsy. He was taken to Willamette Falls Hospital for evaluation.

Pritchett returned to the jail the next day. Dr. Lindquist changed Pritchett's medication orders.

## LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed. R. Civ. P. 56(a). The initial burden is on the moving party to point out the absence of any genuine dispute of material fact. Once the initial burden is satisfied, the burden shifts to the opponent to demonstrate through the production of probative evidence that there remains a fact dispute to be tried. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the court "must view the evidence on summary judgment in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party." Nicholson v. Hyannis Air Serv., Inc., 580 F.3d 1116, 1122 n.1 (9th Cir. 2009) (internal quotation omitted).

## DISCUSSION

I.   RN Wendy Armitage

Pritchett alleges that RN Armitage carelessly and with deliberate indifference improperly injected him with an excessive dose of insulin.

Prison officials violate the Eighth Amendment if they are deliberately indifferent to a prisoner's serious medical needs. Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004).

> To establish an Eighth Amendment violation, a prisoner must satisfy both the objective and subjective components of a two-part test. First, there must be a demonstration that the prison official deprived the prisoner of the minimal civilized measure of life's necessities. Second, a prisoner must demonstrate that the prison official acted with deliberate indifference in doing so.
>
> A prison official acts with deliberate indifference . . . only if the [prison official] knows of and disregards an excessive risk to inmate health and safety. Under this standard, the prison official must not only be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, but that person must also draw the inference. If a [prison official] should have been aware of the risk, but was not, then the [prison official] has not violated the Eighth Amendment, no matter how severe the risk. This subjective approach focuses only on what a defendant's mental attitude actually was. Mere negligence in diagnosing or treating a medical condition, without more, does not violate a prisoner's Eighth Amendment Rights.

Id. (internal citation and quotation omitted).

There is no evidence RN Armitage was involved in Pritchett's care at 4:45 p.m., immediately prior to his transfer to the hospital. His claim must rest on the Novolog RN Armitage administered at 10:30 a.m. The only evidence in the record shows that RN Armitage administered the dose Dr. Lewis ordered which correlated to Pritchett's blood sugar level at the 10:30 a.m. test. There is no evidence that Pritchett showed any signs which might indicate that RN Armitage should have consulted with a doctor rather than administer the ordered Novolog. Thus, Pritchett failed to demonstrate a factual issue that RN Armitage deprived him of the minimal civilized measure of life's necessities. The only evidence demonstrates that she followed the doctor's orders to the letter.

Pritchett also failed to demonstrate a factual issue that RN Armitage acted with deliberate indifference to his situation. There is no evidence that any facts existed from which RN Armitage could have inferred that there was a substantial risk of serious harm to Pritchett if she

administered the Novolog to him as per the doctor's orders. There is not even a factual issue that RN Armitage acted negligently, much less violated Pritchett's constitutional rights.

Accordingly, I grant summary judgment and dismiss the Eighth Amendment claim alleged against RN Armitage.

II.     Clackamas County and Sheriff Craig Roberts

In the Second Amended Complaint, Pritchett alleges the following against the Sheriff:

> Sheriff Craig Roberts deliberately instituted a policy of deliberate indifference to the medical needs of the plaintiff by knowingly and willfully not hiring a full time doctor as needed to control the medical jail department under his control.

Second Am. Compl. ¶ 11.

In Monell v. Department of Social Services of New York, 436 U.S. 658, 98 S. Ct. 2018 (1978), the Court held that a "local government may indeed be liable for violation of constitutional rights resulting from a policy statement, ordinance, regulation or decision officially adopted and promulgated by that body's officers or pursuant to governmental custom even though such a custom has not received formal approval through the body's official decisionmaking channels." Villegas v. Gilroy Garlic Festival Ass'n, 541 F.3d 950, 957 (9th Cir. 2008) (internal citations omitted). If there is no constitutional violation, there is no municipal liability. Id.

Although Pritchett has alleged an appropriate *Monell* claim concerning a government policy, he presents no evidence to prove it. First, as I concluded above, Pritchett suffered no constitutional violation during the blood sugar incident requiring his hospitalization. Thus, under Villegas, there can be no municipal liability based on the same conduct. Second, there is no

evidence that having a full-time doctor would have resulted in a different treatment plan. His treatment plan was put in place by Dr. Lewis, not by a registered nurse or a nurse practitioner. Moreover, a doctor is available for consultation at any hour of any day.

For these reasons, I grant summary judgment and dismiss the claim alleged against Sheriff Roberts.[1]

III.    Attorney Fees

Defendants seek attorney fees incurred in defending this case.

A prevailing defendant is awarded attorney fees under 42 U.S.C. § 1988 if the case is "unreasonable, frivolous, meritless, or vexatious." Vernon v. City of Los Angeles, 27 F.3d 1385, 1402 (9th Cir. 1994). Although Pritchett did not prevail, his claims cannot be characterized that way. I note that he was ill enough to be hospitalized during this incident. Thus, I deny defendants' motion for attorney fees.

## CONCLUSION

Defendants' Motion for Summary Judgment on the Plaintiff's Second Amended Complaint [40] is granted. All claims are dismissed against the remaining defendants. I do not award attorney fees to defendants. This action is dismissed with prejudice.

IT IS SO ORDERED.

Dated this      28th       day of March, 2012.

                                            /s/ Garr M. King
                                        Garr M. King
                                        United States District Judge

---

[1] I do not read Pritchett's Second Amended Complaint to allege a claim against Clackamas County. If he intended to do so, I also dismiss all claims against the County.